## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF OKLAHOMA

MARCIE JEANETTE )
PENNINGTON, )
 )
Plaintiff, )
 )
v. )          Case No. CIV-21-118-SPS
 )
KILOLO KIJAKAZI, )
Acting Commissioner of the Social )
Security Administration,[1] )
 )
Defendant. )

### OPINION AND ORDER

The claimant Marcie Jeanette Pennington requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons discussed, the Commissioner's decision is hereby AFFIRMED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that

---

[1] On July 9, 2021, Kilolo Kijakazi became the Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Ms. Kijakazi is substituted for Andrew M. Saul as the Defendant in this action.

[s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (*quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800

---

[2] Step one requires the claimant to establish that she is not engaged in substantial gainful activity. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity ("RFC") to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

(10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951). *See also Casias*, 933 F.2d at 800-01.

### Claimant's Background

The claimant was thirty-five years old at the time of the administrative hearing (Tr. 59). She was educated through one year of college and has previously worked as a daycare worker and janitor (Tr. 47, 203). The claimant alleges that she has been unable to work since February 7, 2017, due to dyslexia, post-traumatic stress disorder (PTSD), anxiety, depression, carpal tunnel, breathing problems, severe allergies, and partial deafness in her left ear (Tr. 202).

### Procedural History

On November 27, 2018, the claimant applied for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. Her application was denied. ALJ Harold D. Davis conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated March 31, 2020 (Tr. 38-49). The Appeals Council denied review, so the ALJ's opinion is the final decision of the Commissioner for purposes of this appeal. *See* 20 C.F.R. § 416.1481.

### Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 416.967(b), except that she was limited to jobs which involve simple tasks,

simple instructions, and only incidental contact with the public (Tr. 42).  The ALJ then concluded that although the claimant could not return to her past relevant work, she was nevertheless not disabled because there was work that she could perform, *e. g.*, housekeeping cleaner, poultry processor, and inspector packer (Tr. 47-49).

## Review

The claimant contends that the ALJ erred by:  (i) failing to properly consider all of her severe and nonsevere impairments, beginning at step two; (ii) failing to account for all her impairments at step four, including failing to properly evaluate opinion evidence in the record, (iii) improperly identifying jobs she could perform at step five; and (iv) failing to properly evaluate her subjective symptoms.  None of these contentions have merit, and the decision of the Commissioner should therefore be affirmed.

The ALJ found that the claimant had the severe impairments of obesity, depression, and anxiety disorder with panic attacks, and that her alleged dyslexia and tunnel vision were not medically determinable (Tr. 40-41).  The relevant medical evidence reflects that the claimant was largely treated at Sallisaw Health and Wellness, with diagnoses including major depression, recurrent, severe, with psychotic features and panic disorder with agoraphobia (Tr. 437). X-rays of the left wrist and elbow from June 2018 were normal (Tr. 476-477).  In August 2018 (prior to the November 2018 application date), the claimant was reportedly planning to attend an anime convention in Oklahoma City, which was stressful for her (Tr. 437).

Treatment notes after the application date reflect medication management for her mental impairments, but indicate she had no musculoskeletal joint pain until December

2019 when she reported mid and lower back pain (Tr. 447-461, 516).  In March 2019, the claimant's abdomen revealed echogenic liver with heterogenous texture most likely liver parenchymal disease, as well as cholelithiasis with no evidence of acute cholecystitis (Tr. 474).  A January 2020 treatment note indicates musculoskeletal symptoms of the lower back chronic, with muscle aches and pain localized to one or more joints (Tr. 523).

On February 5, 2019, Dr. Theresa Horton, Ph.D., conducted a mental status examination of the claimant (Tr. 318-320).  Dr. Horton noted that the claimant appeared physically comfortable, but that she was socially awkward and uncomfortable, appearing anxious though euthymic and somewhat odd (Tr. 319).  Dr. Horton also noted that the claimant reported being a hesitant speaker due to fearfulness, but that she was actually over talkative (Tr. 319).  She assessed the claimant with chronic PTSD, early onset dysthymia, and dependent personality traits (Tr. 319).  Dr. Horton further noted that the claimant appeared capable of understanding, remembering, and managing most simple and complex instructions and tasks, but that she appeared to have poor skills to cope with stressors and is often easily overwhelmed (Tr. 320).  Dr. Horton stated that this became notable with more complex tasks, and that the claimant's pace was below average and appeared to interfere with productivity (Tr. 32).  Dr. Horton again indicated that the claimant's social skills were awkward, and could interfere with her level of adjustment, and that she may not do as well in areas that were fast paced or densely populated, noting an exception being places where the claimant was historically comfortable, *i. e.*, comic conventions or groups where she feels accepted and more able to fit in (Tr. 320).

On February 23, 2018, Dr. Conner Fullenwider completed a medical report as to the claimant's physical impairments (Tr. 325-332). She had a positive Tinel's sign on the bilateral wrists, but her physical exam was otherwise within normal limits (Tr. 328-332). She was able to lift/carry/handle/finger/feel normally, squat and rise from that position, rise from a sitting position without assistance, get up and down from the exam table without difficulty, heel/toe walk with ease, and tandem walk normally (Tr. 328). Additionally, she could stand but not hop on either foot bilaterally (Tr. 328).

On January 14, 2020, Dr. Larry Lewis, M.D., completed a number of forms assessing the claimant's physical impairments and her ability to perform work (Tr. 482-490). He indicated she would be absent from work more than four days per month due to depression, PTSD, carpal tunnel syndrome, allergies, anxiety, and low back pain (Tr. 482, 489). He indicated that her pain was intractable and virtually incapacitating, that working would render medication necessary, and that medication effects would cause her to be unable to function at a productive level of work (Tr. 483). He checked boxes stating that the claimant's depression, anxiety, and PTSD would affect her physical condition, but that moderate stress is okay (Tr. 487). He estimated she could walk less than a block or 100 yards, sit forty-five minutes at one time, and sit and stand/walk less than two hours in an eight-hour workday, and that she would need five-minute periods of walking around and to take unscheduled breaks (Tr. 487-488). He also indicated that she could lift less than ten pounds no matter the frequency, and that she was extremely (if not totally limited) in moving her neck and other postural limitations (Tr. 489). He did not complete the portion of the form related to using hands/fingers/arms (Tr. 489). Dr. Lewis met the claimant the

-6-

day of the exam, assigned her a fair prognosis, and stated that her diagnoses were PTSD and back and neck pain (Tr. 486).

State reviewing physicians determined initially and upon reconsideration that the claimant's alleged physical impairments were nonsevere (Tr. 88-89, 104-105). As to her mental impairments, the state reviewing physicians reviewed the claimant's mental health record and found that she could perform simple and some complex tasks with routine supervision, relate superficially with co-workers, relate to the public in an incidental manner, and adapt to a work situation (Tr. 88, 103).

At the administrative hearing, the claimant testified that her problems were related to anxiety, depression, and breathing problems, although she had not been diagnosed with asthma (Tr. 63-64). She testified that she has carpal tunnel (although no doctor had performed any testing for this) but did not have or need surgery, and that she has problems with bending due to back pain, as well as standing or sitting down for long periods of time (Tr. 65, 69). She testified that she let her driver's license expire due to tunnel vision, which she had diagnosed herself based on an online search (Tr. 66, 70). She stated that she sleeps four to five hours per night and takes two to three naps per day (Tr .70). She and a roommate also completed function reports with similar statements (Tr. 221-236)

In his written decision at step four, the ALJ thoroughly summarized the claimant's hearing testimony and function reports, as well as the medical evidence in the record both before and after her application date, including a report of back pain in May 2018 (Tr. 44-45). The ALJ noted that, from these treatment notes, the claimant only reported physical problems such as nosebleeds and UTIs, and that notes reflected "mundane" physical

findings and no intense pain, although he noted that her BMI of 36.3 would categorize her as obese (Tr. 44). As to the opinions in the record, the ALJ found them partially persuasive as to her physical impairments, but further limited her to light work based on her obesity and experiences of shortness of breath when walking long distances (Tr. 45). The ALJ thoroughly summarized Dr. Fullenwider's report but noted that he provided no opinion as to the claimant's functional limitations as to physical and mental work activities (Tr. 46). He likewise noted Dr. Lewis's "extreme limitations," but found his opinion unpersuasive because Dr. Lewis's forms contained no clinical findings or objective signs to support his opinion and it was wholly inconsistent with Dr. Fullenwider's objective findings despite the two consultative exams being performed within a month of each other (Tr. 46). The ALJ found Dr. Horton's objective test findings supported her opinion and was consistent with the claimant's reports of attending an anime convention and concert (Tr. 45-46). The ALJ also found that the claimant's statements regarding her symptoms were not consistent with the evidence, noting she began caring for a kitten in December 2019, as well as her reported daily activities, records indicating an ongoing effort to return to work, and plans to attend an anime convention and a concert despite reports she cannot tolerate being around others (Tr. 44-45). He likewise found the Third-Party Function Report completed by the claimant's roommate was unpersuasive and duplicative of the claimant's own statements (Tr. 46). He ultimately determined the claimant was not disabled, identifying three jobs the claimant could perform (Tr. 48).

The claimant first asserts that the ALJ erred in failing to discuss the severity of her carpal tunnel, low back pain, and breathing problems at step two. Assuming *arguendo* that

this *was* error by the ALJ, such error was nevertheless harmless because the ALJ *did find* the claimant's obesity, depression, and anxiety disorder with panic attacks were severe impairments, which obligated the ALJ to then consider *all* of the claimant's impairments (severe or otherwise) in subsequent stages of the sequential evaluation, including the step four assessment of the claimant's RFC.  *See Hill v. Astrue*, 289 Fed. Appx. 289, 292 (10th Cir. 2008) ("Once the ALJ finds that the claimant has *any* severe impairment, he has satisfied the analysis for purposes of step two.  His failure to find that additional alleged impairments are also severe is not in itself cause for reversal. . . . [T]he ALJ is required to consider the effect of *all* of the claimant's medically determinable impairments, both those he deems 'severe' and those 'not severe.'") [citations omitted].

Next, the claimant contends that the ALJ erred at step four in assessing her RFC by failing to account for all of her impairments.  More specifically, she claims the ALJ failed to consider or account for her carpal tunnel, low back pain, and breathing problems peripheral neuropathy, and in evaluating the opinions of Dr. Horton and Dr. Lewis opinion. An RFC has been defined as "what an individual can still do despite his or her limitations." Soc. Sec. R. 98-6p, 1996 WL 374184, at *2 (July 2, 1996).  It is "an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities."  *Id.*  This includes a discussion of the "nature and extent of" a claimant's physical limitations including "sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as

reaching, handling, stooping, or crouching)."   20 C.F.R. §§ 404.1545(b), 416.945(b). Further, this assessment requires the ALJ to make findings on "an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis[,]" and to "describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record."  Soc. Sec. R. 98-6p, 1996 WL 374184, at *1, 7.  Here, the ALJ has fulfilled his duty.  The claimant nevertheless asserts that the evidence does not support a finding that she can perform work at the assigned RFC level because he failed to include manipulative limitations despite her positive Tinel's signs bilaterally.

        Contrary to claimant's arguments, however, the ALJ discussed all the evidence in the record and his reasons for reaching the RFC.  *Hill*, 289 Fed. Appx. at 293 ("The ALJ provided an extensive discussion of the medical record and the testimony in support of his RFC finding. We do not require an ALJ to point to 'specific, affirmative, medical evidence on the record as to each requirement of an exertional work level before [he] can determine RFC within that category.'") (*quoting Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004)).  The evidence does not reflect that the claimant had manipulative limitations as to her hands and wrists, positive Tinel's sign notwithstanding, and even Dr. Lewis's "extreme" limitations did not address limitations related to handling, fingering, and feeling. And the ALJ clearly considered her low back pain and breathing problems by discussing them at several points at step four and noting how the entirety of the record informed his decision.  Furthermore, she has pointed to no medical documentation providing further limitations.  Because she points to no evidence other than her own assertions, the Court

declines to find an error here. *Cf. Garcia v. Astrue*, 2012 WL 4754919, at *8 (W.D. Okla. Aug. 29, 2012) ("Plaintiff's mere suggestion that a 'slow' gait might adversely affect his ability to perform the standing and walking requirements of light work is not supported by any authority.").

The Court turns next to the ALJ's assessment of the opinions of Dr. Horton and Dr. Lewis. For claims filed on or after March 27, 2017, medical opinions are evaluated pursuant to 20 C.F.R. § 416.920c. Under these rules, the ALJ does not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)[.]" 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the ALJ evaluates the persuasiveness of all medical opinions and prior administrative medical findings by considering a list of factors. *See* 20 C.F.R. §§ 404.1520c(b), 416.920c(b). The factors are: (i) supportability, (ii) consistency, (iii) relationship with the claimant (including length of treatment relationship, frequency of examinations, purpose and extent of treatment relationship, and examining relationship), (iv) specialization, and (v) other factors that tend to support or contradict a medical opinion or prior administrative finding (including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements."). 20 C.F.R. §§ 404.1520c(c), 416.920c(c). Supportability and consistency are the most important factors and the ALJ must explain how both factors were considered. *See* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). Generally, the ALJ is not required to explain how the other factors were considered. *Id.* However, when the ALJ finds that two or more medical opinions or prior administrative findings on the same issue are equally well-

supported and consistent with the record but are not exactly the same, the ALJ must explain how "the other most persuasive factors in paragraphs (c)(3) through (c)(5)" were considered.  20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3).

The Court finds that the ALJ's treatment of Dr. Horton's opinion and Dr. Lewis's opinion was appropriate.  Despite claimant's assertion that the ALJ ignored Dr. Horton's statements about the claimant being socially awkward and possibly not doing well in fast-paced or densely populated environments, the ALJ *did note* Dr. Horton's statements and specifically found them consistent and supported by objective test findings, then *further limited* her RFC to simple tasks and simple instructions thereby excluding complex tasks and instructions where Dr. Horton noted that increasing complexity of tasks might become more difficult for the claimant.  Likewise, the ALJ properly noted that Dr. Lewis's opinion was not supported by his own objective findings or other opinions and evidence in the record, nor was it consistent with treatment records or Dr. Fullenwider's exam that had been close in time.  Thus, the ALJ's findings as to these opinions were sufficiently clear for the Court to determine the weight he gave to the opinions, as well as sufficient reasons for the weight assigned.  *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007) ("The ALJ provided good reasons in his decision for the weight he gave to the treating sources' opinions.  Nothing more was required in this case.").  The Court thus finds that the ALJ properly considered the opinions of Dr. Horton and Dr. Lewis, along with all the other opinions in the record in concert with the medical evidence in accordance with the proper standards.

Next, the claimant contends that the ALJ erred in analyzing her subjective statements, and that his errors with regard to her RFC mean that he could not have properly assessed the consistency of her complaints. The Commissioner uses a two-step process to evaluate a claimant's subjective statements of pain or other symptoms:

> First, we must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain. Second . . . we evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities . . .

Soc. Sec. Rul. 16-3p, 2017 WL 5180304, at *3 (October 25, 2017).[3]  Tenth Circuit precedent agrees but characterizes the evaluation as a three-part test. *See, e. g., Keyes-Zachary,* 695 F.3d at 1166-67, citing *Luna v. Bowen*, 834 F.2d 161, 163-64 (10th Cir. 1987).[4]  As part of the symptom analysis, the ALJ should consider the factors set forth in 20 C.F.R. § 416.929(c)(3), including: (i) daily activities; (ii) the location, duration, frequency, and intensity of pain or other symptoms; (iii) precipitating and aggravating factors; (iv) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken; (v) treatment for pain relief aside from medication; (vi) any

---

[3]  SSR 16-3p is applicable for decisions on or after March 28, 2016, and superseded SSR 96-7p, 1996 WL 374186 (July 2, 1996). *See* SSR 16-3p, 2017 WL 5180304, at *1. SSR 16-3p eliminated the use of the term "credibility" to clarify that subjective symptom evaluation is not an examination of [a claimant's] character." *Id.* at *2.

[4]  Analyses under SSR 16-3p and *Luna* are substantially similar and require the ALJ to consider the degree to which a claimant's subjective symptoms are consistent with the evidence. *See, e. g., Paulek v. Colvin*, 662 Fed. Appx. 588, 593-594 (10th Cir. 2016) (finding SSR 16-3p "comports" with *Luna*) and *Brownrigg v. Berryhill,* 688 Fed. Appx. 542, 545-546 (10th Cir. 2017) (finding the factors to consider in evaluating intensity, persistence, and limiting effects of a claimant's symptoms in 16-3p are similar to those set forth in *Luna*). The Court agrees that Tenth Circuit credibility analysis decisions remain precedential in symptom analyses pursuant to SSR 16-3p.

other measures the claimant uses or has used to relieve pain or other symptoms; and (vii) any other factors concerning functional limitations. *See* Soc. Sec. Rul. 16-3p, 2017 WL 5180304, at *7-8. An ALJ's symptom evaluation is entitled to deference unless the Court finds that the ALJ misread the medical evidence as a whole. *See Casias,* 933 F.2d at 801. An ALJ's findings regarding a claimant's symptoms "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) [quotation omitted]. The ALJ is not required to perform a "formalistic factor-by-factor recitation of the evidence[,]" *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000), but simply "recit[ing] the factors" is insufficient. *See* Soc. Sec. Rul. 16–3p, 2017 WL 5180304 at *10.

As outlined above, the Court finds that the ALJ set out the appropriate analysis and cited evidence supporting her reasons for finding that the claimant's subjective complaints were not believable to the extent alleged, *i. e.*, he gave clear and specific reasons that were specifically linked to the evidence in the record including her daily activities and efforts to return to work. Also, the RFC specifically limited the claimant to light work in light of her obesity and *her own reports* of shortness of breath, and the ALJ also found that the claimant was to have only incidental contact with the general public in light of her *reported* difficulty in unfamiliar/uncomfortable settings. The ALJ accounted for her subjective complaints and there is no indication here that the ALJ misread the claimant's medical evidence taken as a whole. His evaluation is therefore entitled to deference. *See Casias*, 933 F.2d at 801.

Finally, the claimant asserts that the ALJ's failure to consider the additional limitations resulted in an error in the identification of jobs she can perform at step five. But as discussed above, the Court finds that substantial evidence supports the ALJ's determination that the claimant can perform the above-listed RFC. This contention is therefore without merit. In essence, the claimant asks the Court to reweigh the evidence in her favor, which the Court cannot do. *See Qualls v. Apfel*, 206 F.3d 1368, 1371 (10th Cir. 2000) ("In conducting our review, we may neither reweigh the evidence nor substitute our judgment for that of the Commissioner.") (*citing Casias*, 933 F.3d at 800).

In this case, the ALJ noted and fully discussed the findings of all of the claimant's various treating, consultative, and reviewing physicians, including the records related to the claimant's nonsevere and non-medically determinable impairments. The Court finds that when all the evidence is taken into account, the conclusion that the claimant could perform the RFC above, with the aforementioned limitations, is well supported by substantial evidence. The undersigned Magistrate Judge finds no error in the ALJ's failure to include any additional limitations in the claimant's RFC. *See, e. g., Best-Willie v. Colvin*, 514 Fed. Appx. 728, 737 (10th Cir. 2013) ("Having reasonably discounted the opinions of Drs. Hall and Charlat, the ALJ did not err in failing to include additional limitations in her RFC assessment."). Accordingly, the decision of the Commissioner should be affirmed.

## Conclusion

In summary, the Court finds that correct legal standards were applied by the ALJ, and the decision of the Commissioner is therefore supported by substantial evidence. The

decision of the Commissioner of the Social Security Administration is accordingly hereby AFFIRMED.

**DATED** this 1st day of August, 2022.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**